# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OVBOKHAN ADUN ODIASE,   )
           )
    Petitioner,   )
           )
   vs.      )  Civil Action No. 3:25-cv-206
           )  Judge Stephanie L. Haines
LEONARD ODDO, *in his official*  )
*capacity as Warden of Moshannon Valley* )
*Processing Center, et al.*,   )
           )
    Respondents.  )

## OPINION

On July 9, 2025, Petitioner Ovbokhan Adun Odiase ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) and a Motion for Emergent Relief, Immediate Release Pursuant to *Lucas v. Hadden*, and/or Order to Show Cause (the "PI Motion") with an accompanying Brief in Support of the PI Motion. (ECF Nos. 2–3).[1] On July 17, 2025, Respondents Leonard Oddo (in his official capacity as Warden of Moshannon Valley Processing Center ("Moshannon")), Brian McShane (in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), Philadelphia Field Office), Kristi Noem (in her official capacity as Secretary of the Department of Homeland Security ("DHS")), and Pam Bondi (in her official capacity as Attorney General of the United States) (collectively, "Respondents"), through counsel, filed a Response Brief in Opposition to the PI Motion. (ECF No. 9). On July 18, 2025, Petitioner filed a

---

[1] On July 10, 2025, the Court entered a scheduling order for the PI Motion. (ECF No. 7). The Court also ordered that Petitioner not be removed from the United States or transferred outside of the Western District of Pennsylvania until further order of the Court. (*Id.* at 2–3). The temporary administrative stay did not constitute a ruling on the merits of the PI Motion or on the Petition. (*Id.* at 3). Upon the docketing of this Opinion and its accompanying Order, the temporary administrative stay shall be lifted.

Reply Brief in Support of the PI Motion.  (ECF No. 10).  Accordingly, the PI Motion is ripe for disposition.  For the following reasons, the Court **DENIES** the PI Motion at ECF No. 2.

## I.    Factual Background

Petitioner is a native and citizen of Nigeria.  (ECF No. 1 ¶ 11).  In October 2020, Petitioner entered the United States on a B2 nonimmigrant visa and was authorized to remain in the United States until April 13, 2021.  (*Id.* ¶ 14).  Petitioner has remained in the United States ever since her arrival.  (*Id.*).

In early October 2021, DHS issued Petitioner a Notice to Appear, charging her as removable from the United States for overstaying her B2 visa.  (*Id.* ¶ 16).  Thereafter, in late October 2021, Petitioner filed an asylum application with the Immigration Court in Elizabeth, New Jersey ("IC").  (*Id.* ¶ 17).  Approximately six months after filing her asylum application, Petitioner became eligible for work authorization and a Social Security number, which she obtained.  (*Id.* ¶ 18).

On February 20, 2024, New Jersey police officers arrested Petitioner on state charges of robbery, conspiracy, aggravated assault, and burglary.  (ECF No. 1-5).  A New Jersey court granted her release the following day.  (ECF No. 1 ¶ 21).  Upon her release, on February 21, 2024, ICE detained Petitioner.  (*Id.* ¶ 22).  Petitioner is now detained at Moshannon in Philipsburg, Pennsylvania.  (*Id.*).

On January 10, 2025, an Immigration Judge ("IJ") of the IC found Petitioner was removable pursuant to 8 U.S.C. § 1227(a)(1)(B).  (ECF No. 1-7).  The IJ also granted Petitioner's withholding of removal to Nigeria on humanitarian grounds.  (*Id.*).  DHS and Petitioner waived the appeal of the IJ's decision, making the decision administratively final on January 10, 2025.  (*Id.*).

On March 12, 2025, New Jersey police officers took Petitioner from Moshannon to New Jersey to execute a bench warrant for an alleged violation of Petitioner's monitoring conditions. (ECF No. 1 ¶ 31). On March 17, 2025 Petitioner appeared before a New Jersey court; learning that Petitioner was in ICE custody, the State of New Jersey withdrew the motion alleging the violations, and the judge vacated the bench warrant. (*Id.* ¶ 32).

While in New Jersey, Petitioner filed a habeas petition on April 3, 2025, in the U.S. District Court for the District of New Jersey. (*Id.* ¶ 34). The same day, ICE re-detained Petitioner and transferred her back to Moshannon. (*Id.*). On April 22, 2025, the U.S. District Court for the District of New Jersey dismissed Petitioner's habeas petition as moot and premature. (ECF No. 9-1).

According to ICE, in light of the IJ's order to withhold removal to Nigeria, ERO now is attempting to effect Petitioner's removal to other countries. (ECF No. 9-2 ¶ 7). ERO sent Requests for Acceptance of Alien to Brazil, France, Jamaica, Japan, and Spain; all countries denied the Request, except for Jamaica, which remains pending. (*Id.*).

Pursuant to President Trump's Executive Order 14165, *Securing Our Borders*, 90 Fed. Reg. 8467, ICE elevated Petitioner's case to Removal and International Operations ("RIO") for review and potential submission of additional Requests for Acceptance of Alien not previously contacted by local ERO. (*Id.* ¶¶ 12–13). On July 9, 2025, RIO indicated that there are third-country removal opportunities for Petitioner. (*Id.* ¶ 14). RIO has stated that Petitioner's removal from the United States is imminent once a third-country removal opportunity is secured. (*Id.* ¶ 19).

According to ICE, ERO concluded that Petitioner should remain in ICE custody pending ERO and RIO's attempts to secure a third-country removal. (*Id.* ¶ 15). Invoking Petitioner's

overstay of her B2 visa and her arrest for robbery, conspiracy, aggravated assault, and burglary, ICE determined that Petitioner poses a flight risk and danger to the community or to the safety of other persons and property, if released. (*Id*). According to ICE, ERO further concluded that a likelihood of issuance of travel documents and removal to a third country exists, warranting detention pending her removal. (*Id.* ¶ 16).

According to ICE, ERO has regularly reviewed Petitioner's custody status. (*Id.* ¶ 17). As recently as July 9, 2025, ICE states that it has redetermined that Petitioner's criminal history and expectation of removal warrants detention. (*Id.*).

## II.    Jurisdiction

Title 28, United States Code, Section 2241 grants federal courts the authority to hear habeas corpus matters brought by aliens challenging the lawfulness of their detention by ICE. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *see also Bodnari v. Noem*, No. 3:24-CV-163, 2025 WL 317985, at *2 (W.D. Pa. Jan. 28, 2025); *Akhmadjanov v. Oddo*, No. 3:25-CV-35, 2025 WL 660663, at *2 (W.D. Pa. Feb. 28, 2025); *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 1892445, at *3 (W.D. Pa. July 9, 2025).

## III.    Preliminary Injunction Standard

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits—necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

## IV.    Analysis

Regarding the likelihood-of-success-on-the-merits factor, Petitioner argues that her "continued and prolonged detention is unconstitutional and violates her substantive due process right to be free from unlawful restraints on her liberty, and [8 U.S.C. §] 1231(a)(6), as interpreted by [the Supreme Court in] *Zadvydas*[*v. Davis*, 533 U.S. 678 (2001)]." (ECF No. 3 at 4). She further argues that "ICE has also violated [her] due process rights by repeatedly failing to review her custody properly." (*Id.* at 6).

In response, Respondents argue that Petitioner's "detention accords with 8 U.S.C. § 1231(a)(6) and does not violate her due process rights." (ECF No. 9 at 7). Respondents further argue that Petitioner "has received the custody review required under 8 C.F.R. § 241.4." (*Id.* at 10). The Court agrees with the Respondents.

In *Zadvydas*, the Supreme Court decided that 8 U.S.C. § 1231(a)(6), the post-removal-period statute, authorizes the Government to detain a removable alien "only for a period *reasonably necessary* to secure the alien's removal," rather than "*indefinitely* beyond the removal

period." 533 U.S. at 682 (emphasis in original). The *Zadvydas* Court prescribed the presumptively reasonable time period as six months. *Id.* at 701. The presumptively reasonable time period is only a presumption—not an ironclad timeframe. *Id.* ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The applicable burden only shifts to the Government if, in addition to showing that the post-removal-order detention has surpassed six months, the alien also shows that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Here, the Court *assumes without deciding* that Petitioner has shown that the post-removal-order detention has surpassed six months. Petitioner's removal was finalized on January 10, 2025. (ECF No. 1-7). Petitioner has been in ICE custody since that date—minus the 22 days that she was in the State of New Jersey's custody. (*See* ECF No. 1 ¶¶ 31–34). Assuming that the 22 days count toward Petitioner's post-removal period calculation and that the post-removal period did not restart upon Petitioner's April 22 re-detention by ICE, Petitioner's detention would have passed the six-month threshold on July 11, 2025.

However, regardless of whether Petitioner has shown her detention has surpassed six months, Petitioner has failed to produce evidence demonstrating good cause to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.

Conversely, Respondents sufficiently argue that there is a significant likelihood of removal in the reasonably foreseeable future. According to ICE Deportation Officer Alassane Coulibaly's

Declaration, sworn under the penalty of perjury, ICE is undergoing good-faith efforts to effect Petitioner's removal. (*See* ECF No. 9-2). ERO has sent Requests for Acceptance of Alien to Brazil, France, Jamaica, Japan, and Spain. Although four of the countries denied the Requests, the Jamaica Request remains pending. Further, Respondents have invoked the new Administration's policy—namely, Executive Order 14165—regarding international cooperation in entering agreements to facilitate the removal of aliens present in the United States in violation of federal law (e.g., Safe Third Country Agreements under 8 U.S.C. § 1158(a)(2)). Pursuant to Executive Order 14165, Petitioner's case has been elevated to RIO for review and potential submission of additional Requests for Acceptance of Alien to countries not previously contacted by local ERO. Notably, on July 9, 2025, RIO indicated that there are third-country removal opportunities for Petitioner. And RIO has stated that Petitioner's removal from the United States is imminent once a third-country removal opportunity is secured. Accordingly, Petitioner has failed to satisfy the likelihood-of-success-on-the-merits factor because she has not met the burden prescribed by *Zadvydas*.

Lastly, regarding Petitioner's argument that ICE has violated her due process rights by failing to review her custody, Petitioner also has failed to show that she has a likelihood of success on the merits of this claim. ICE Deportation Officer Alassane Coulibaly has averred under the penalty of perjury that ERO has regularly reviewed Petitioner's custody status. She further stated that as recently as July 9, 2025, ICE redetermined that Petitioner's criminal history and expectation of removal warrants detention. In sum, ICE has followed the process for custody determinations as prescribed by 8 C.F.R. § 241.4(d). Petitioner has offered no evidence to the contrary.

**V.    Conclusion**

For the foregoing reasons, the Court **DENIES** Petitioner's PI Motion at ECF No. 2.  An appropriate Order follows.


DATED: July 31, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE