## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OVBOKHAN ADUN ODIASE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:25-206 |
| | ) | Judge Stephanie L. Haines |
| LEONARD ODDO, *in his official* | ) | |
| *capacity as Warden of Moshannon Valley* | ) | |
| *Processing Center, et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION

Petitioner Ovbokhan Adun Odiase ("Ms. Odiase"), a citizen of Nigeria who is currently in immigration custody, requests that this Court extend its previously granted Temporary Restraining Order ("T.R.O."),[1] ECF Nos. 27, 31, and that this Court "enjoin Respondents from removing her from the continental United States unless and until they comply with the minimum requirements of due process and the protections against persecution and torture enshrined in U.S. and international law." ECF No. 37, p. 15. As more specifically articulated at the September 16, 2025, hearing regarding the existing T.R.O., Ms. Odiase asks this Court to order Respondents to demonstrate that credible and reasonable assurances have been made by Ghana—the country to which Respondents were seeking to remove Ms. Odiase—that (1) Ms. Odiase will not be persecuted should she be removed to Ghana and that (2) Ghana would not subsequently remove Ms. Odiase to Nigeria—her native country from which the Immigration Judge withheld her

---

[1] The Court previously granted Ms. Odiase's Motion for a T.R.O. for the limited purpose of "preserv[ing] the status quo … only so long as is necessary to develop a fuller record and hold a hearing." ECF No. 31. In doing so, the Court withheld full resolution of Ms. Odiase's Motion until the record was sufficiently developed. ECF No. 31. The record now being fully developed, the Court now turns to resolve Ms. Odiase's Motion for a T.R.O., ECF No. 27, on its merits.

removal due to her fear of persecution. Ms. Odiase also requests a reasonable fear interview before an asylum officer so that she may present her claims of fear regarding removal to Ghana. *See* ECF No. 37, p. 3.

For the following reasons, the Court finds that it lacks jurisdiction over Ms. Odiase's requests, and the Court therefore will DENY her Motion. ECF No. 27.

## I.    Background[2]

Ms. Odiase is a native and citizen of Nigeria. ECF No. 37-1, ¶ 1. When she was six years old, she was subjected to female genital mutilation ("FMG"). *Id.* at ¶ 3. At twenty-five, Ms. Odiase married her ex-husband, and the two subsequently had children—a son and a daughter. *Id.* at ¶¶ 4–5; ECF No. 1, ¶ 12. Despite Ms. Odiase's opposition, her family was adamant that her daughter be subjected to FMG. ECF No. 37-1, ¶ 5. In order to protect her daughter and herself, Ms. Odiase came to the United States in October of 2020 on a B2 nonimmigrant visa and was joined by her children in March of 2021 when they also arrived in the United States on B2 nonimmigrant visas—all three visas were to expire on April 13, 2021. ECF No. 1, ¶¶ 14–15. In early October 2021, the Department of Homeland Security ("DHS") initiated removal proceedings against Ms. Odiase by issuing a Notice to Appear, charging her as removable for overstaying her B2 visa. *Id.* at ¶ 16. Subsequently, in late October, Ms. Odiase applied for asylum, *id.* at ¶ 17, and obtained both work authorization and a Social Security number approximately six months later—which she utilized to find employment in New Jersey, supporting herself and her children. *Id.* at ¶ 18.

---

[2] The Court derives the following factual background from Ms. Odiase's habeas petition, ECF No. 1, her Brief in support of her Motion for a T.R.O., ECF No. 29, and her Reply in support of her Motion for a Temporary Restraining Order, ECF No. 37-1, as well as the exhibits attached to each filing.

Ms. Odiase was arrested on February 20, 2024, on charges including robbery, conspiracy, aggravated assault, and burglary. ECF No. 1-5. The following day, February 21, 2024, Ms. Odiase was released on non-monetary conditions from state custody but was detained by the United States Immigration and Customs Enforcement "(ICE")" and ultimately moved to Moshannon Valley Processing Center ("Moshannon"). ECF No. 1, ¶¶ 21-22. On January 10, 2025, an Immigration Judge rendered a decision in Ms. Odiase's removal proceedings, finding her removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1227(a)(1)(B)) but withholding her removal to Nigeria under INA § 241(b)(3) (8 U.S.C. 1231(b)(3)), due to her fear of persecution, removal, or death upon return. ECF No. 37, p. 1; ECF No. 1-7. The Immigration Judge did not designate an alternative country of removal. *Id.* at p. 3; ECF No. 29, p. 4. Both parties waived appeal of the Immigration Judge's determination, rendering the removal decision administratively final on January 10, 2025. ECF No. 1, ¶ 25; ECF No. 1-7, p. 4.

Ms. Odiase commenced this action on July 9, 2025, filing, through counsel, a Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, and a Motion for Emergent Relief, ECF No. 2, with an accompanying Brief in Support, ECF No. 3. Respondents Leonard Oddo (in his official capacity as Warden of Moshannon), Brian McShane (in his official capacity as Acting Field Office Director of ICE, Enforcement and Removal Operations ("ERO"), Philadelphia Field Office), Kristi Noem (in her official capacity as Secretary of DHS) and Pam Bondi (in her official capacity as Attorney General of the United States) (collectively, "Respondents"), through counsel, filed a Response Brief in Opposition to Ms. Odiase's Motion for Emergent Relief on July 17, 2025, ECF No. 9, and Petitioner filed a Reply Brief in Support on July 18, 2025. ECF No. 10. On July 31, 2025, this Court issued an Opinion and Order, ECF Nos. 11, 12, denying Ms. Odiase's Motion for Emergent Relief.

In its July 31st Opinion, the Court assumed, without deciding, that Ms. Odiase had shown that her post-removal detention had surpassed six months but nevertheless found that she "failed to produce evidence demonstrating good cause to believe that there [wa]s no significant likelihood of her removal in the reasonably foreseeable future." ECF No. 11, p. 6. The Court noted that although four of the five Requests for Acceptance of Petitioner that ERO had sent to countries including Brazil, France, Jamaica, Japan, and Spain had been denied, the Jamaica Request remained pending. *Id.* at p.7. Thus, because there remained a significant likelihood of removal in a foreseeable time, Petitioner "failed to satisfy the likelihood-of-success-on-the-merits factor because she ha[d] not met the burden prescribed by *Zadvydas*." *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

On August 11, 2025, after the matter was returned to the assigned Magistrate Judge to adjudicate Ms. Odiase's underlying Petition, Ms. Odiase filed an Emergency Motion for Discovery, ECF No. 15, and an accompanying brief in support, ECF No. 16, contending that discovery was necessary to determine the status of the outstanding Jamaica Request and whether her removal was reasonably foreseeable. Magistrate Judge Dodge granted that Motion on August 12, 2025. ECF No. 18. Respondents objected, ECF Nos. 19, 21, and this Court issued a Memorandum Order on August 15, 2025, ECF No. 22, affirming Judge Dodge's August 12th decision.

On September 4, 2025, Ms. Odiase filed a Motion for a T.R.O., ECF No. 27, and accompanying brief in support. ECF No. 29. Therein, Ms. Odiase averred that, on September 4, 2025, she learned that she was to be removed to an unspecified country later that evening. *Id.* at

4

p. 2. Ms. Odiase contended that the lack of notice deprived her of the opportunity to express fear of removal to said unknown country, violating her due process rights. *Id.* at p. 7. As such, she requested that this Court enter an immediate T.R.O. to preserve the status quo, preventing her removal that evening.[3] *Id.* at pp. 2–3.

In requesting a T.R.O. from this Court, Ms. Odiase argued that she "has a due process right to meaningful notice and opportunity to be heard before ICE deports her to a third country." *Id.* at p. 8 (citing *Aden v. Nielson*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019)). She asserted that when "ICE attempts to remove a non-citizen to a country not designated on their removal order, they must have a meaningful opportunity to seek fear-based relief from removal to that country, consistent with the Immigration and Nationality Act ('INA') and the Convention Against Torture" ("CAT"). *Id.*[4]

On September 4, 2025, the Court entered a T.R.O., ECF No. 31, temporarily enjoining Respondents from removing Ms. Odiase from the continental United States to preserve the status quo for a period of time sufficient for Respondents to file a response and for a hearing to be conducted on the matter. On September 5, 2025, the Court entered a briefing schedule and set a hearing on the matter for September 16, 2025, at 11:00 AM. ECF Nos. 32, 33.

On September 11, 2025, Respondents submitted their Response in opposition to Ms. Odiase's Motion for a T.R.O. ECF No. 34. In addition to Respondents' claims that Ms. Odiase's Motion for a T.R.O. is now moot since she received the relief requested, ECF No. 34, pp. 34–35, Respondents set forth two primary arguments: (1) This Court lacks jurisdiction to enjoin ICE's

---

[3] Respondents aver that Ms. Odiase was scheduled to be removed on a flight the following day, September 5, 2025, not the evening of September 4, 2025. ECF No. 34, p. 2. This correction was not disputed at the September 16, 2025, hearing on the matter of the T.R.O. granted to Ms. Odiase. As such, the Court will refer to this specific removal attempt as occurring on September 5, 2025. Later filings revealed that the intended country of removal on September 5, 2025, was Ghana. *See* ECF No. 34, p. 3.

[4] The Court notes that Ms. Odiase's arguments raised in her September 4, 2025, Motion for a T.R.O. remain before the Court in adjudicating Ms. Odiase's request for further injunctive relief. *See* ECF No. 37, p.15.

enforcement of lawful removal orders, *id* at pp. 5–9, and (2) Ms. Odiase has not demonstrated a likelihood of success on the merits of her due process claim as "the procedures set forth in the March 2025 Memo comport with due process."[5]  *Id.* at p. 13.  In March 2025, DHS published a Memo establishing a two track administrative process for the removal of aliens to countries other than those designated in final orders of removal: (1) On the first track, if the United States has received sufficient assurances from the third country that no aliens will be tortured upon removal there, aliens may be removed to that country without any additional procedures; (2) On the second track, when the United States has not received sufficient assurances from the third country, aliens are entitled to notice of the third country and screening for fear of being tortured in that third country.  *Id.* at p. 4; ECF No. 34-2.

On September 15, 2025, Ms. Odiase filed a Reply to Respondents' Response.  ECF No. 37.  Therein, Ms. Odiase argues that this Court has jurisdiction over her claim.  She also represents that "[t]he President of Ghana confirmed publicly that his government agreed to accept people deported from the United States and to facilitate their return to their country of origin."  *Id.* at pp. 1–2, 9.  As such, Ms. Odiase sets forth that should she be removed to Ghana, she will then be further removed from Ghana to Nigeria in contradiction of the Immigration Judge's decision granting her withholding of removal.  *Id.* at p. 10.  In this way, Ms. Odiase reasons that she is not challenging her final order of removal, but, rather, she is challenging Respondents' attempt to circumvent that removal order.  *Id.* at p. 10.  Additionally, Ms. Odiase argues that, with respect to her, Respondents failed to follow their own procedures as set forth in the March 2025 Memo.  ECF No. 37, p. 9.  Specifically, she contends that because she was not provided with any notice or a reasonable fear interview prior to her attempted removal on September 5, 2025, Respondents

---

[5] It is implied, but never explicitly stated, that Respondents complied with the procedures outlined therein with respect to Ms. Odiase and her attempted removal on September 5, 2025.

"were required to have credible assurances from Ghana that she would not be subjected to torture or persecution" upon her attempted removal there. *Id.* However, Ms. Odiase notes that no such assurances have been produced by Respondents, and, even if such assurances had been produced, Ms. Odiase claims that such assurances could not be sufficient in light of the remarks of Ghana's President. *Id.* Because she was not afforded notice or an opportunity to raise her fear of persecution in Ghana, Ms. Odiase asserts that Respondents violated due process. *Id.* at p. 6.

On September 16, 2025, the Court held a Hearing on the matter, ECF No. 39, and, having taken the matter under advisement, addresses the abovementioned issues below.

## II.    Analysis

For the following reasons, the Court finds that it lacks jurisdiction over Ms. Odiase's requests in her Motion for a T.R.O. Accordingly, the Court cannot and does not address Ms. Odiase's arguments regarding the process to which she is due relative to her potential removal to Ghana.[6]

As the Supreme Court has explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"):

---

[6] On this score, while the Court is not reaching the merits of Ms. Odiase's due process claims, it does note that she has had the opportunity to move to reopen immigration proceedings—while the T.R.O. issued by this Court remained in place—so that an Immigration Judge may determine whether Ghana is a proper country of removal. While Ms. Odiase has indicated that said opportunity has not been pursued because she "is unlikely to succeed on [such] a motion[,]" ECF No. 37, p. 11, the opportunity during this window of time has nonetheless been afforded. Further, the Third Circuit has at least certain authority to hear a petition for review from the denial of a Motion to Reopen immigration proceedings. *See Pllumi v. AG U.S.*, 642 F.3d 155, 157 (3d Cir. 2011). Of course, this Court in no way purports to predict how any other judicial body would handle Ms. Odiase's claims if she were to present them to that body. The Court's point is simply that Ms. Odiase has, at her disposal, a mechanism by which *she at least may attempt* to have her due process claims heard by an Article III court. *Cf. Yakubov v. AG US*, 586 F. App'x 86 (3d Cir. 2014) (holding that, where an alien was ordered removed to Israel, or in the alternative, Russia, that alien could move to reopen his immigration proceedings if he were not ultimately removed to Israel and needed to argue that he would face torture in Russia).

Although the Court does not, and, in fact, cannot, address the merits of Ms. Odiase's due process claim at this time, Respondents must be aware that, when the Court inquires into issues briefed by the parties, such as how agencies complied with their own procedures, it expects more sufficient answers than "I do not have that information at this time."

> [A]uthorizes noncitizens to obtain direct "review of a final order of removal" in a court of appeals. 110 Stat. 3009-607, 8 U.S.C. § 1252(a)(1). [I]n the deportation context, a "final order of removal" is a final order "concluding that the alien is deportable or ordering deportation." § 1101(a)(47)(A). The Act also states that judicial review "of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). In other words, a noncitizen's various challenges arising from the removal proceeding must be "consolidated in a petition for review and considered by a court of appeals." *INS v. St. Cyr*, 533 U.S. 289, 313, and n. 37 (2001).

*Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020) (cleaned up). Further, the REAL ID Act of 2005, "clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Id.* at 580 (citing 8 U.S.C. § 1252(a)(5)).[7]

As a result of Sections 1252(a)(5) and (b)(9), district courts "lack jurisdiction to review most claims that even relate to removal. . . [b]ecause judicial review of a final order is available only in the court of appeals, district courts cannot review [] 'arising from' claims either." *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177, 180, 184, 186 (3d Cir. 2020) (holding, however, that Section 1252(b)(9) does not pose a jurisdictional bar "when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal" such as injunctive relief preventing removal before a final removal order is rendered); *see also Tazu v. AG U.S.*, 975 F.3d 292, 299 (3d Cir. 2020) ("[T]he legal questions [petitioner] raises about the scope of the Attorney General's discretion to re-detain him *are bound up with (and thus 'aris[e] from')* an 'action taken' to remove him[.]") (emphasis added).

---

[7] The Court also notes that "§ 2242(d) of FARRA provides for judicial review of CAT claims as part of the review of a final order of removal pursuant to section 242 of the [INA.]" *Nasrallah*, 590 U.S. at 580 (internal quotation marks and citation omitted).

As Ms. Odiase recognizes, she has a final order of removal to Nigeria, even though that removal was withheld. ECF No. 1-7, p. 3; *see supra* Section I. Thus, the issue squarely before the Court is whether Respondents' decision to remove Ms. Odiase to Ghana is "bound up with" her final removal order such that this Court lacks jurisdiction to consider Ms. Odiase's requests in her Motion for a T.R.O. For the following reasons, the Court determines that Respondents' decision is, in fact, bound up with Ms. Odiase's final removal order.

In *Tonfack v. AG U.S.*, 580 F. App'x 79 (2014), the Third Circuit heard an appeal from a District Court's decision to dismiss a Section 2241 Habeas Petition for lack of jurisdiction. The Petitioner, Gabin Tonfack ("Mr. Tonfack"), was a citizen of the Ivory Coast who had been admitted to the United States as a nonimmigrant student. *Id.* at 79. On April 16, 2013—after Mr. Tonfack's criminal conviction—an Immigration Judge: (1) ordered Mr. Tonfack removed from the United States; (2) granted Mr. Tonfack's withholding of removal as to the Ivory Coast; and, (3) failed to identify a country to which Mr. Tonfack would be removed. *Id.* at 79–80. Both parties waived their right to appeal the Immigration Judge's decision. *Id.* at 80.

Mr. Tonfack remained in ICE custody, and ICE obtained travel documents to remove him to Cameroon. *Id.* (citing 8 C.F.R. § 1208.16(f)) ("Nothing in this section or § 1208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred."). However, when ICE attempted to put Mr. Tonfack on a plane destined for Cameroon, he forcibly resisted. *Id.* After this failed removal attempt, Mr. Tonfack filed his Section 2241 Petition with the District Court, claiming that "he ha[d] no connection to Cameroon, and the travel documents, which state[d] he was born and lived there before entering the United States, [were] inaccurate." *Id.* In doing so, he petitioned the Court to enter an order

prohibiting ICE from removing him to Cameroon, but the District Court dismissed the case for lack of jurisdiction.[8] *Id.* Mr. Tonfack appealed to the Third Circuit. *Id.*

Around the time of his appeal, Mr. Tonfack asked the Immigration Judge to reopen his proceedings "so that he could apply for relief under [CAT] with regard to Cameroon, and on June 18, 2013, the [Immigration Judge] granted this request." *Id.* A hearing was scheduled on Mr. Tonfack's reopened action, "but, for reasons that are not clear, [he] voluntarily terminated that action." *Id.*

On appeal from the District Court's dismissal of Mr. Tonfack's Section 2241 Petition, the Third Circuit disagreed with Mr. Tonfack's argument that his Petition was "independent of his removal order[.]" *Id.* at 81. In rejecting this contention, the Third Circuit reasoned as follows:

> Critically, [Mr.] Tonfack argues not just that the specific Cameroonian travel documents are invalid, *but that Cameroon is not a proper country of removal. This issue is encompassed in the removal order*—the IJ is obligated to designate a country of removal as part of the removal proceedings. The fact that the IJ here may have neglected to select a country or countries for removal does not change this analysis[.]

*Id.* (emphasis added) (cleaned up).[9] The Third Circuit concluded that Mr. Tonfack's Habeas Petition—which sought an order barring his removal to Cameroon—challenged his underlying order of removal, meaning that the District Court lacked jurisdiction over the matter. *Id.*

---

[8] The District Court found that it lacked jurisdiction due to 8 U.S.C. § 1252(a)(5). *Tonfack v. Holder*, No. 3:13-CV-1886, 2013 WL 5570232 (M.D. Pa. Oct. 9, 2013).

[9] Despite the fact that "when an alien is ordered removed, 8 C.F.R. § 1240.12(d) requires the Immigration Judge to identify a country, or countries in the alternative, to which the alien may be removed[,]" *In re I–S– & C–S–*, 24 I. & N. Dec. 432, 433–34 (BIA 2008), DHS is not limited in its authority to "remove the alien to any other country as permitted by section 241(b) of the" INA when "DHS is unable to remove the alien to the specified or alternative country or countries" identified by the Immigration Judge in the final order of removal. 8 C.F.R. § 1240.12(d); *see also Nasrallah*, 590 U.S. at 582 (explaining in the context of CAT claims that "[a]n order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still 'may be removed at any time to another country where he or she is not likely to be tortured.'") (citing 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)).

In sum, the Third Circuit has found that, when an alien: (1) has a final order of removal, (2) that final order of removal did not designate an alternate country of removal, (3) that alien is slated for removal to a third country, and (4) the alien has objections to the third country, the alien's challenge to removal to the third country is encompassed within the removal order. That precedent applies precisely to the situation now before this Court—Ms. Odiase (1) has a final order of removal, (2) that final order did not designate an alternate country, (3) Ms. Odiase was slated for removal to Ghana, and (4) Ms. Odiase is currently attempting to challenge her removal to Ghana before this Court. Therefore, Ms. Odiase's challenge to her removal to Ghana is encompassed within the removal order entered in January 2025.[10]

The Court holds that Ms. Odiase's removal to Ghana is closely "bound up with" her removal order such that this Court lacks jurisdiction over her Motion for a T.R.O. *Tazu*, 975 F.3d at 299; *see also DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (noting that it had stayed the district court's order "preliminarily enjoining the Government from removing 'any alien' to a 'country not explicitly provided for on the alien's order of removal' without following certain procedures designed to enable an alien to seek relief" under CAT pending disposition of any appeal and petition for writ of certiorari); *C.R.L. v. Dickerson*, Case No. 4:25-CV-175 (CDL), 2025 WL 1800209 (M.D. Ga. June 30, 2025) (reaching the same conclusion as this Court on highly similar facts). Therefore, the Court holds that the jurisdictional bar enunciated in 8 U.S.C. § 1252 (a)(5), (b)(9), (g) precludes this Court from further considering Ms. Odiase's present requests for relief in her Motion for a T.R.O.[11]

---

[10] Although *Tonfack* is a non-precedential opinion, it represents the legal analysis of three judges who sit on the appellate body above this Court. Further, this Court agrees with the analysis therein and finds that it accords with binding Third Circuit Precedent. Accordingly, the Court follows *Tonfack* here.

[11] "[T]o prevent removal proceedings from becoming fragmented, and hence prolonged. . ."Congress used complementary provisions to funnel removal-related claims away from district courts and into a petition for review in a single court of appeals[;] [s]ometimes, the provisions overlap." *Tazu*, 975 F.3d at 296 (citing 8 U.S.C. § 1252(b)(9),

## III.    Conclusion

For all of the foregoing reasons, the Court will DENY Ms. Odiase's Motion for a T.R.O. ECF No. 27. Whatever the merits of Ms. Odiase's due process claims, this Court is barred by law from considering them. The Court will therefore leave it to other judicial bodies with jurisdiction over her claims to assess whether the process that the Government is currently providing to Ms. Odiase complies with the United States Constitution.

An appropriate Order follows.

DATED: September 18, 2025

**STEPHANIE L. HAINES**
**U.S. DISTRICT COURT JUDGE**

---

(g); *Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 483 (1999)) (cleaned up) (internal quotations omitted). The Court notes that it lacks jurisdiction to adjudicate Ms. Odiase's requests in her motion for a T.R.O. due to the fact that she ask this Court to both: (1) review an issue—whether Ghana is a proper country of removal— that is closely "bound up with" her final order of removal (§ 1252 (a)(5), (b)(9)); and, (2) review an action of the executive branch to execute her removal order (§ 1252(g)). Section 1252(g) "strips us of jurisdiction to review the Attorney General's 'decision or *action* … to … execute [a] removal order[]'" and section 1252 (b)(9) renders review of any claim "aris[ing] from any action taken or proceeding brought to remove an alien" "available only in judicial review of a final order" in the appropriate circuit court of appeals. *Id.* at 294, 299 (emphasis added); *see also Reno*, 525 U.S. at 483 (Section "1252(g) as we interpret it serves the continuing function of making clear that those specified decisions and actions [commencing proceedings, adjudicating cases, and executing removal orders]. . . are covered by the 'zipper' clause of § 1252(b)(9)."); *Rranxburgaj v. Wolf*, 825 Fed.Appx. 278, 283 (6th Cir. 2020) ("In the REAL ID Act, Congress decided that, as a matter of public policy, we do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order—like the ones presented in this suit. Accordingly, whether or not we agree with ICE's decision to execute [a] plaintiff's removal order. . . th[at] decision[] [is] not reviewable by" district courts). Given that the instant claim arises from "action taken . . . to remove an alien [Ms. Odiase] from the United States[,]" 8 U.S.C. § 1252(b)(9), pursuant to a final order of removal, which did not withhold removal to Ghana, *see* ECF No. 1-7; 8 C.F.R. § 1208.16(f)) ("Nothing in this section or § 1208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred."); *see also supra* note 9, the Court finds that the jurisdictional bar set forth in multiple provisions of 8 U.S.C. § 1252 prevent this Court from considering Ms. Odiase's present requests for relief; the same provisions which strip this Court of jurisdiction enunciate that jurisdiction exists in other judicial bodies to adjudicate Ms. Odiase's claims.